# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARITY SOFTWARE, LLC | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:13-cv-795 -MRH |
| | ) | |
| v. | ) | Consolidated With |
| | ) | Case No. 2:12-cv-1609-MRH |
| FINANCIAL INDEPENDENCE | ) | |
| GROUP, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

In this civil action, Plaintiff Clarity Software, LLC ("Plaintiff") has sued Defendant Financial Independence Group, LLC ("Defendant" or "FIG") for alleged infringement of certain copyrighted software of which Plaintiff claims ownership. Specifically, the complaint alleges that Plaintiff "is the owner of copyrighted Pen D'Calc R&EP Software, including, but not limited to, the Inherited illustration Software Program, the Inherited IRA Program, and the Inherited Annuity Program (collectively, the 'Software')." (Compl., "Introduction and Summary of Claims," pp. 1-2, ECF No. 1.) Plaintiff claims that, without its consent or knowledge, "Defendant has ... disseminated unlawfully developed derivative versions of the Software, including its marketing presentation output, ... and has made it available to virtually anyone who has access to the internet." (Id. at 2.)

Defendant disputes Plaintiff's ownership of the copyright in question and has filed a motion for summary judgment on that basis (ECF No. 18) which is now pending before the Court.[1] For the reasons that follow, Defendant's motion for summary judgment will be granted.

## I. Background[2]

### A. Vincent Heck's Development of the PenD'Calc Software

Plaintiff's sole member, Vincent Heck ("Heck") (A.121),[3] is the developer of the Software at issue in this case as well as its predecessor versions. In 1987, Heck developed the original DOS-based version of the "PenD'Calc" software, a pension distribution calculator, while serving as the sole shareholder of MicroBase Corporation. (A. 123.)

In 1993, MicroBase Corporation transferred its ownership of the copyright for the PenD'Calc software to the newly-formed PenD'Calc Corporation (hereinafter, "PenD'Calc"). (A. 123.) In 1996, Heck began developing the 32-bit Windows-based version of the Software that is the subject of this litigation. (A. 124.)

Heck became the sole shareholder of PenD'Calc in 1997 or 1998. (A. 123.) At the same time, Heck was the sole owner of the copyright for the new 32-bit version of the Software, which was licensed to PenD'Calc for distribution. (A. 124.)

---

[1] This Court has subject matter jurisdiction over the dispute pursuant to 28 U.S.C. §1331.

[2] The factual background is derived from the undisputed evidence of record and the disputed evidence of record viewed in the light most favorable to Plaintiff, the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) (noting that, at the summary judgment stage, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor").

[3] References to the Defendant's appendix in support of its motion for summary judgment, filed at ECF No. 20-1, will be designated ("A. ___."). References to Plaintiff's appendix in opposition to Defendant's motion for summary judgment, filed at ECF No. 25, will be designated ("AA ____.").

*B. Eric Wallace's 1995 Loan to PenD'Calc*

Eric Wallace ("Wallace"), Heck's friend and C.P.A., began advising Heck on financial matters in the early 1990s. (A. 124; DCSMF ¶1.)[4] On December 14, 1995, Wallace made a loan to PenD'Calc (the "1995 Loan") because he perceived an opportunity for a business relationship that he thought would be beneficial to his own interests. (DCSMF ¶¶2-3.) Heck guaranteed the loan, both in his individual capacity and as PenD'Calc's president, shareholder, and director. (A. 5, 98; DCSMF ¶4.) The 1995 Loan was secured by PenD'Calc's corporate assets and by certain of Heck's personal assets, including the copyright for the Software that Heck personally owned. (DCSMF ¶¶5-8.)

*C. PenD'Calc's Default on the 1995 Loan*

In the late 1990's Heck encountered financial difficulties after falling ill. (A. 124.) As a result of Heck's difficulties, PenD'Calc began to fall behind on trust fund tax payments. (DCSMF ¶13.) By 2001, PenD'Calc owed the IRS approximately $60,000 in unpaid taxes and penalties. (DCSMF ¶14.) At that time, the unpaid balance on the 1995 Loan owed to Wallace also totaled approximately $60,000. (Id. ¶ 15.)

Wallace negotiated with the IRS on behalf of PenD'Calc and Heck in response to the IRS's threat to shut down PenD'Calc over the unpaid trust fund taxes. (DCSMF ¶16.) In 2001, Heck and Wallace entered into an escrow agreement pursuant to which PenD'Calc's client, AXA, made payments to an escrow agent who then made payments to the IRS and Wallace. (Id.

---

[4] References to Defendant's Concise Statement of Material Facts, ECF No. 20, and Plaintiff's corresponding responses thereto, ECF No. 24, will be designated ("DCSMF ¶___."). References to Plaintiff's Additional Undisputed Material Facts, ECF No. 24, and Defendant's corresponding responses thereto, ECF No. 34, will be designated ("PAUMF ¶___.").

¶17.) Notwithstanding this arrangement, in 2003 PenD'Calc defaulted on the 1995 Loan. (DCSMF ¶19.)

### D. The August 29, 2003 Settlement Agreement and the Putative Formation of "Clarity Software, LLC"

In connection with PenD'Calc's loan default, Heck and Wallace agreed that Wallace would take ownership of Heck's intellectual property rights. (A. 124.) To that end, Wallace founded a new business under the name "Clarity Software, LLC" (hereinafter, "Clarity") for the stated purpose of taking ownership of and marketing the Software. (A. 124; DCSMF ¶22.) Plaintiff contends that "Clarity Software, LLC" was formed on August 29, 2003. (DCSMF ¶¶ 32, 33.) Although Wallace could not state the exact date on which formed this new business, he agreed in his deposition that August 29, 2003 could be the date. (DCSMF ¶ 32; A. 22-23.) Wallace maintains that, at the time Clarity was formed, he directed an attorney to register the entity as an LLC with the Pennsylvania Department of State. (*See* ECF No. 1-5, ¶6.) At all times thereafter, Wallace operated the business under the assumption that the company had been duly registered as an LLC. (Id.)

On August 29, 2003, PenD'Calc, Clarity, Heck, and Wallace entered into a "Satisfaction, Settlement, and Release Agreement" (the "2003 Agreement"). (A. 98-99.) Pursuant to the 2003 Agreement, all of PenD'Calc's assets and all of Heck's property rights in the Software were purportedly transferred to Clarity and the 1995 Loan was ostensibly discharged. (A. 98-99, 124.) Wallace retained Attorney William Weiler to draft the 2003 Agreement. (DCSMF ¶ 38.) Prior to retaining Weiler, Wallace was aware that Weiler and Heck had a professional relationship, which he believed encompassed Weiler working as the corporate attorney for PenD'Calc from time to time. (Id. ¶ 39.)

4

As of the date of the 2003 Agreement, Heck became the General Manager of Clarity, and PenD'Calc was dissolved. (A. 124; DCSMF ¶¶ 37 43.) There was no written employment agreement between Clarity and Heck relating to Heck's position as general manager. (DCSMF ¶ 44.)

Following Clarity's putative assumption of PenD'Calc's assets and Heck's property right to the Software pursuant to the 2003 Agreement, Clarity held itself out as an LLC and operated under the business name "Clarity Software, LLC." Among other things, Clarity maintained a checking account at PNC Bank and identified itself on state and federal tax filings as "Clarity Software, LLC" under a federal tax identification number. (PAUMF ¶¶ 2-4.) On September 21, 2004, a copyright for the Software was registered with the U.S. Copyright Office, with "Clarity Software, LLC" listed as the claimant. (*See* ECF No. 1-6.)

### E. Heck's Bankruptcy Proceedings

On December 31, 2003, Weiler, serving as Heck's personal attorney, filed a voluntary petition for personal bankruptcy under chapter 13 of the bankruptcy code on behalf of Heck and his wife. (DCSMF ¶52.) Heck assisted Weiler in the preparation of the "Chapter 13 Plan and Schedules Dated 1/23/04" that were filed on January 26, 2004. (Id. ¶53.) Upon filing for bankruptcy, Heck estimated that he owed the IRS $220,000 in taxes, penalties, and interest that had gone unpaid from 1996 through 2003. (Id. ¶54.) Heck's bankruptcy schedules indicated that he owed over $178,000 to his secured creditors. (Id. ¶55.) The bankruptcy schedules did not list or otherwise disclose the existence of either the 2003 Agreement or the transaction which occurred pursuant to that agreement. (DCSMF ¶¶ 56-59, 61, 63; A. 144-96.) Similarly, Heck's employment as the general manager for Clarity was not listed on the January 23, 2004 schedules. (Id. ¶ 60; A. 144-96.)

5

On May 24, 2014, Chapter 13 Trustee Ronda J. Winnecour filed "Objections to Confirmation of Plan Dated January 23, 2004" in Plaintiff's Chapter 13 case. (DCSMF ¶ 64; A. 197-202.) Among other things, the Trustee asserted that Heck had failed to list among his assets certain bank accounts which he had been holding jointly with his uncle. (A. 198.)

The United States also filed objections to confirmation of the January 23, 2004 plan. (DCSMF ¶ 65; A. 203-04.) The United States asserted that it had $65,435.36 in secured claims against the debtors and $27,275.96 in unsecured priority claims which, the United States contended, were required to be paid in full under the bankruptcy code. (A. 203.) The United States objected to the debtors' proposal under their Chapter 13 plan to make a $30,000 offer to the Internal Revenue Service as a compromise payment of this debt. (Id.) (A. 203-04; DCSMF ¶65.)

On July 12, 2004, Weiler – acting as Heck's bankruptcy counsel -- filed a motion to convert the debtors' chapter 13 case to a chapter 7 case. (DCSMF ¶ 67.) In the motion, debtors asserted that they "are unable to make the proposed plan payments, as the income of the parties will not be sufficient to pay the secured and priority unsecured claimants in full, and will certainly not be sufficient to pay any amount to the general unsecured creditors." (A. 210; DCSMF ¶ 67.)

On July 22, 2004, following a hearing, the bankruptcy court granted the objections to the plan, converted the case to chapter 7 proceeding, and appointed a new trustee. (DCSMF ¶ 68.) The court subsequently granted a Discharge of Debtor on November 12, 2004. (Id. ¶70.) On May 9, 2005, the Chapter 7 Trustee reported that there were no assets to administer for the benefit of creditors to the estate. (Id. ¶72.) The bankruptcy case was closed on July 7, 2006. (Id. ¶73.)

*F. The 2008 Assignment of Wallace's Interests in Clarity to Heck*

In December of 2008, Heck and Wallace entered into an agreement (the "2008 Agreement") wherein Wallace transferred all of his interest in Clarity to Heck in consideration of $1 and certain mutual releases set forth in the agreement. (DCSMF ¶¶ 75, 77.) As a result of this transfer, Heck became the "sole member" of Clarity. (*See* ECF No. 1-5, ¶8; A. 124.)

*G. The 2012 Lawsuit*

On November 5, 2012 Clarity filed a federal lawsuit against Defendant and another entity based on their alleged misappropriation and wrongful dissemination of the Software. *See Clarity Software, LLC v. Financial Independence Group, LLC, et al.,* Case No. 2:12-cv-1609-MRH (W.D. Pa.) (the "2012 Lawsuit"). The First Amended Complaint (ECF No. 31) -- the operative pleading in that case -- asserted a single count of copyright infringement against Defendant.[5]

During the course of the 2012 Lawsuit, Defendant challenged Clarity's status as an LLC, arguing that Clarity had never in fact been organized as an LLC in the Commonwealth. Defendant filed a motion to dismiss the litigation on the grounds that "Clarity Software, LLC," the sole named plaintiff in that action, did not exist as a legal entity and therefore lacked both the capacity to sue and the capacity to own a copyright. (*See* Case No. 2:12-cv-1609-MRH, ECF No. 45.)

In response to this argument, Clarity attempted to address any potential jurisdictional deficiency by formally registering (or, as it argues, re-registering) "Clarity Software, LLC" with the Pennsylvania Department of State on March 7, 2013. (*See* Case No. 2:12-cv-1609-MRH,

---

[5] At various points during the course of the 2012 Lawsuit, Clarity identified "Carolina Computer Partners" or "Lucas Partners, Inc. d/b/a Carolina Computer Partners" as defendants. However, any claims against these parties were ultimately dismissed for reasons not pertinent to the instant motion for summary judgment motion.

ECF No. 55-2 and *id.*, ECF No. 55-3.) Clarity also argued that, to the extent Heck (rather than Clarity) was the real party in interest in the 2012 Lawsuit, Heck could be substituted into the litigation or ratify it under Rule 17(a)(3) of the Federal Rules of Civil Procedure. (*See* Case No. 2:12-cv-1609-MRH, ECF No. 51 at 11.)

Subsequently, this Court entered a Memorandum Order finding that there was insufficient evidence to establish that "Clarity Software, LLC" was the properly named plaintiff in the 2012 Lawsuit or that the case could proceed as it was then styled. (*See* Case No. 2:12-cv-1609-MRH, ECF No. 61 at 7.) The Court denied Defendant's motion to dismiss the 2012 Lawsuit without prejudice and stayed the case pending an opportunity for Clarity to cure any jurisdictional deficiencies by way of an amended pleading. (Id. at 8.)

Clarity subsequently sought leave to file a new, related action (*see* Case No. 2:12-cv-1609-MRH, ECF No. 62), and the Court granted that request (*id.* at ECF No. 64).

### H. The Instant Proceedings

Plaintiff – now proceeding as a duly organized limited liability company under the name "Clarity Software, LLC" -- commenced this litigation on June 10, 2013, asserting one count of copyright infringement against Defendant. (ECF No. 1).[6] On November 15, 2013, Defendant filed the instant motion for summary judgment (ECF No. 18) and supporting materials (ECF Nos. 19 and 20). On December 27, 2013, Plaintiff filed its memorandum (ECF No. 23), counterstatement of facts (ECF No. 24), and appendix (ECF No. 25) in opposition to Defendant's motion. Defendant filed its reply brief (ECF No. 33) and supporting appending

---

[6] By text order dated July 17, 2013, the Court consolidated the 2012 Lawsuit at Case No. 2:12-cv-1609-MRH with the instant litigation. Pursuant to the consolidation order, both cases are proceeding under the docket number for the instant litigation.

(ECF No. 33-1) on January 17, 2014, and Plaintiff filed its sur-reply (ECF No. 37) on January 29, 2014. On February 6, 2014 the Court held oral argument. (ECF No. 38.)

As a result of the foregoing proceedings, the issues raised by Defendant's motion have been adequately joined and are ripe for adjudication.

## II. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a court must draw all reasonable inferences from the underlying facts in the light most favorable to the non-moving party." *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 162 (3d Cir. 2001). "When there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (internal quotation and marks omitted).

## III. Discussion

The complaint in this action sets forth a single count of copyright infringement in violation of the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq.* To bring a claim for copyright infringement, a plaintiff must show (1) that he owned the copyrighted work and (2) that the copyrighted work was copied by the defendant. *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.,* 307 F.3d 197, 206 (3d Cir. 2002). The Copyright Act provides that copyright ownership "vests initially in the authority or authors of the work," 17 U.S.C. §201(a),

and that such ownership "may be transferred in whole or in part by any means of conveyance or by operation of law," *id.* § 201(d). Therefore, the only proper plaintiff with standing in this action for infringement, *i.e.,* the real party in interest, is the one who owns the copyright.

Defendant has moved for summary judgment based on its argument that Plaintiff does not own the copyright at issue in this litigation and, as a result, lacks standing. As Defendant observes, the copyright for the Software was purportedly assigned by Heck to "Clarity Software, LLC" pursuant to the 2003 Agreement. Defendant argues that "Clarity Software LLC" was not organized as a Pennsylvania limited liability company until March 7, 2013; thus, the chain of title was broken in 2003 and Plaintiff never acquired valid ownership of the copyright.

In its complaint, Plaintiff posits two theories in support of its ownership of the copyright. First, Plaintiff alleges that, at the very least, "Clarity Software, LLC" existed as a "*de facto* LLC" prior to March 7, 2013 and "was thus entitled to own and register the Copyright for the Software." (Compl. ¶ 35, ECF No. 1.)[7] Under this theory, Clarity's recent registration as an LLC on March 7, 2013 allegedly had "the legal effect of converting *de-facto* Clarity into a *de-jure* LLC, assuming all of *de-facto* Clarity's rights, property, and obligations." (Id.)

Assuming its prior capacity to own property as a *de* facto LLC is not recognized and that ownership of the Software thereby remained with Heck as of August 29, 2003, Plaintiff contends that it nevertheless acquired valid title of the copyright directly from Heck in 2013. According to the complaint, "Heck and Clarity executed a Transfer Agreement, transferring Heck's intellectual property (including the Software) to Clarity to the extent that it has not already been transferred to Clarity." (Compl. ¶ 36, ECF No. 1.)

---

[7] Heck's purported transfer of rights in the Software to "Clarity Software, LLC" was registered with the U.S. Copyright Office on September 21, 2004, according to the Certificate of Registration appended to the complaint. (*See* ECF No. 1-6.)

In its brief in opposition to the pending summary judgment motion, Plaintiff asserted a third basis for its ownership of the copyright. Plaintiff now contends that limited discovery has unearthed "substantial documentation ... demonstrating Clarity's corporate existence" prior to March 7, 2013. (Pl.'s Br. Opp. to Def.'s Mot. Summ. Judg. 3-4, ECF No. 23) (citing to AA. 003-254).) In other words, Plaintiff now appears to be contending that it was a *de jure* LLC at all relevant times.

Defendant contends that Plaintiff cannot establish a valid chain of title to the copyright under any of its theories. Defendant argues that Clarity's *de jure* existence as a registered LLC could not have occurred before March 7, 2013, when "Clarity Software, LLC" filed its certificate of organization. Defendant further argues that Plaintiff could not have acquired title to the copyright as a *de facto* LLC because: (i) such entities are not recognized under Pennsylvania law, and (ii) there is insufficient evidence in any event to establish Plaintiff's *de facto* existence as an LLC prior to 2013. Based on these arguments, Defendant concludes that Heck maintained ownership of the copyright as of August 29, 2003. Moreover, because Heck filed for bankruptcy on December 31, 2003, Defendant contends that Heck's ownership of the copyright became property of his bankruptcy estate, making the bankruptcy trustee the real party in interest to this litigation. Finally, even assuming that title to the copyright validly passed to Plaintiff by virtue of the 2003 Agreement, Defendant argues that Plaintiff is judicially estopped from asserting that the transfer occurred because Plaintiff is now solely owned by Heck, and Heck failed to disclose the transfer in connection with his bankruptcy proceedings.

*A. Was Plaintiff a "De Jure" LLC as of August 29, 2003?*

The Court will first consider Plaintiff's theory that it was a *de jure* limited liability company at all times relevant herein.

11

To establish *de jure* status as a limited liability company in Pennsylvania, an entity must show that it filed a certificate of organization with the Commonwealth's Department of State. Pursuant to the Limited Liability Company Law of 1994 (the controlling statute), "[a] limited liability company is organized upon the filing of the certificate of organization in the department [of state] or at any later effective time specified in the certificate of organization." 15 Pa. C.S.A. §8914(b). This provision mirrors the corresponding provision of the Business Corporation Law of 1988, which provides that "[u]pon the filing of the articles of incorporation in the Department of State or upon the effective date specified in the articles of incorporation, whichever is later, the corporate existence shall begin." 15 Pa. C.S.A. §1309(b). Thus, until the certificate of organization is filed in the Department of State, *de jure* LLC existence cannot begin.

In this case, Defendant has produced uncontested evidence that, as of February 12, 2013, the Pennsylvania Department of State had no record of Plaintiff's existence as "Clarity Software, LLC" or otherwise. (A. 131-140, ECF No. 20-1.) There is also no dispute that Plaintiff filed a certificate of organization with the Department of State on March 7, 2013 in an attempt to cure any potential jurisdictional deficiencies relative to its standing. (*See* Case No. 2:12-cv-1609, Pl.'s Proposed Sur-Reply 1, ECF No. 55-2; *id.* Ex. 3, ECF No. 55-3.) Because March 7, 2013 is the earliest date for which "Clarity Software, LLC" can show proof of a duly filed certificate of organization, Plaintiff could not have obtained *de jure* LLC status prior to that date.

Plaintiff nevertheless contends that "substantial evidence was unearthed" during discovery which demonstrates its corporate existence prior to March 7, 2013. (Pl.'s Br. Opp. Mot. Summ. J. 3-5, ECF No. 23.) In particular, Plaintiff points to: (1) documents received from various offices of the Commonwealth that Plaintiff claims implicitly recognize its corporate existence (AA. 003, 238-45, 250-54); (2) tax returns for the years 2003 through 2008, which

were filed under a federal tax identification number issued to "Clarity Software, LLC" (AA. 004-233); (3) documentation showing that "Clarity Software, LLC" regularly withheld federal and state income taxes on behalf of its employees and paid all applicable payroll taxes and unemployment compensation contributions (AA. 234, 244-47); and (4) records showing that "Clarity Software, LLC" maintained a checking account at PNC Bank which, according to Plaintiff, required documentation of the account holder's corporate status. Plaintiff also cites to Wallace's deposition testimony that he retained a lawyer for the specific purpose of forming Clarity Software as an LLC. (Wallace Dep. 47:6-22, A. 12, ECF No. 20-1.) Although Wallace could not recall the identity of this lawyer, he recalled that she was a female solo practitioner with an office in the North Hills of Pittsburgh. (Id.) Wallace further testified that he completed "SS-4"[8] and "RCT-101"[9] forms and returned them to the lawyer for her to file. (Wallace Dep. 43:19-22, A. 11, ECF No. 20-1.) Based on the foregoing, Plaintiff contends "there is substantial evidence that it was properly registered with the Commonwealth at some point" prior to March of 2013, and "a reasonable jury could thus infer that the Department of State somehow lost its record of Clarity's organization or did not properly process it originally." (Pl.'s Br. Opp. Mot. Summ. J. 5, ECF No. 23.)[10]

---

[8] The "SS-4" is a form utilized by the Internal Revenue Service entitled "Application for Employer Identification Number." (A. 277-282.)

[9] The "RCT-101" is a Pennsylvania Corporate Tax Report form utilized by the Commonwealth's Department of Revenue. (A. 283-288.)

[10] Plaintiff also contends that the "equities" weigh in favor of a finding that Clarity owns the Software in question, as Heck has spent decades developing and refining the Software and has relied on it as his primary source of income for over twenty-five years. (Heck Aff. ¶¶ 15-16, A. 123-27, ECF No. 20-1.) This argument might have potential relevance with respect to consideration of whether Plaintiff is judicially estopped from asserting that it received title to the copyright via the 2003 Agreement – an issue which this Court does not address in this Memorandum Opinion; however, from an evidentiary standpoint, Plaintiff's argument based on equitable considerations is not relevant to the Court's inquiry whether a reasonable jury could find that Plaintiff was a *de jure* LLC in 2003.

Having carefully considered this evidence, the Court is not persuaded that it can support a reasonable inference of Plaintiff's *de jure* LLC existence prior to March 7, 2013. At most, the state and federal forms and other records proffered by Plaintiff show that Clarity held itself out as a limited liability company in the course of conducting its business; however, they do not necessarily prove that "Clarity Software, LLC" actually existed as a duly organized LLC in accordance with 15 U.S.C. §8914. As Defendant correctly notes, the fact that Plaintiff: (a) received communications from the Pennsylvania Department of Revenue or Department of Labor and Industry addressed to "Clarity Software, LLC," (b) obtained a federal tax identification number for "Clarity Software, LLC," and (c) filed tax returns as a putative LLC does not establish that "Clarity Software, LLC" was recognized *by the Pennsylvania Department of State* as a *properly organized limited liability company*. Plaintiff has not pointed to any evidence in the record establishing that these events could not occur in the absence of a properly filed certificate of organization.

Plaintiff seemingly places special reliance on a November 1, 2007 "Account Review" statement from the Pennsylvania Department of Revenue that lists the "date of incorporation or certificate of authority" for "Clarity Software, LLC" as "January 1, 2003." (AA. 003.) However, Wallace testified that "January 1" is simply a date he provided in tax filings for the sake of convenience in order to avoid questions from tax agencies regarding a business that was started at a later point in the year. (Wallace Dep. 51:21-52:12, A. 13, ECF No. 20-1.) The January 1, 2003 date is also inconsistent with Plaintiff's position that "Clarity Software, LLC" was organized on August 29, 2003. (*See* A. 89, DCSMF ¶ 32.)[11] Moreover, there is no evidence

---

[11] Wallace could not state the precise date on which Clarity was formed, but he agreed that it could have been August 29, 2003. (Wallace Dep. 82:24-84:3, A. 22, ECF No. 20-1.)

in the record to establish that the "date of incorporation or certificate of authority" reflected on the document is derived from official corporate records from the Commonwealth's Department of State, as opposed to, e.g., a unilateral representation from Wallace. Accordingly, the "Account Review" statement does not constitute probative evidence as to whether or when a certificate of organization was actually filed with the Commonwealth's Department of State.

As noted, there is evidence in the record showing that "Clarity Software, LLC" held a checking account at PNC Bank. (A. 100-115.) Wallace testified that, to his recollection, PNC Bank required him to submit "paperwork" and/or "documents" in order to open a bank account in the name of an entity that was an LLC. (Wallace Dep. 78:4-22, A. 21, ECF No. 20-1.) Plaintiff argues that, for purposes of summary judgment, we must credit Wallace's testimony and thereby infer that the account could not have been opened absent proof that Clarity was indeed a duly organized limited liability company.

Notably, however, the only documentation that PNC has on file with regard to Clarity's bank account is Wallace's signature card. (A. 115.) No "corporate resolutions" or other documentation relative to "Clarity Software, LLC" are in PNC's possession. (A. 110.) When asked why he thought the bank did not have any other paperwork pertaining to "Clarity Software, LLC" in its files, Wallace could only speculate that it was because "PNC is a very big bank" with "tens of billions of bank accounts." (Id. 79:7-13.) As Defendant points out, there is no evidence in the record to establish that, in 2003, PNC Bank's policy specifically required the submission of a duly filed certificate of organization in order to open a bank account in the name of an LLC. While Wallace testified generally to having submitted "documents," "information" and/or "paperwork" to PNC Bank (Wallace Dep. 77:25, 78:5-11, 78:20-21, A. 20-21, ECF No. 20-1), he did not testify that he submitted a certificate of organization to PNC Bank. In fact, the

only document he specifically referenced in connection with opening the PNC Bank account is the "LLC agreement" (Wallace Dep. 44:8-11, A. 11, ECF No. 20-1), which Wallace referenced elsewhere in his deposition testimony as "the LLC document" that established the foundational membership underlying agreement between Wallace and his wife as members of the LLC. (Id. at 53:24-54:7, A. 14.)

Wallace maintains that he instructed a female attorney from the North Hills area to organize Clarity as an LLC and, to that end, filled out forms for the attorney to file. (Wallace Dep. 48:20-49:20, A. 12-13; *id.* at 52:23-53:19, A. 13-14, ECF No. 20-1; .) Wallace testified that he was "sure that [the attorney] sent me the papers that were filed with the State of Pennsylvania," but he admittedly did not have copies of those filings. (Id. 49:25-50-3, A. 13, ECF No. 20-1.) Wallace further testified that he was billed $400 for the work and that part of the bill encompassed a filing fee (*id.* 55:20-56:3, A. 14, ECF No. 20-1), but he was unable to produce any documentation evidencing such billing or payment thereof. (Id. at 68:24-69:20, A. 18.) Even when Wallace's testimony is construed in the light most favorable to Plaintiff, at most it references certain documentation he supplied to the attorney for filing, but it does not reference the content of any document received from the Commonwealth's Department of State and, in particular, does not reference the content of a certificate of organization. To the extent Wallace's testimony could be construed as attempting to establish the content of documentation received from the Department of State, it falls short of the requisite evidentiary standards established in Federal Rules of Evidence 1004, 1005 and 1007.

As Defendant points out, in order to accept Plaintiff's theory of *de jure* LLC existence based on the evidence of record in this case, a fact-finder would have to infer the following:

16

1. The unnamed attorney [hired by Wallace] prepared and actually sent the certificate of organization to the Pennsylvania Department of State.

2. The Pennsylvania Department of State received, accepted and filed the certificate of organization.

3. The Pennsylvania Department of State notified the attorney and/or Wallace of its acceptance of the certificate of organization, sent a copy to Wallace and/or his attorney.

4. The Pennsylvania Department of State then lost the certificate of organization, along with all records of the submission and filing of the certificate of organization (e.g., the entire physical file and electronic database record for Clarity Software, LLC).

5. Wallace subsequently provided the certificate of organization to PNC Bank when he opened Clarity Software, LLC's bank account, but PNC lost it, even though PNC Bank still has the signature card that was completed when the account was opened.

6. Wallace, the former President of the Pennsylvania Institute of Certified Public Accountants, lost his copy of the certificate of organization and all records of his communications with his attorney and the Department of State.

7. Everyone else associated with Clarity Software, LLC[ ] lost the certificate of organization and all contemporaneous records.

(Def.'s Reply Supp. Def.'s Mot. Summ. J. 9-10, ECF No. 33.)

The Court is in agreement with Defendant that no rational jury could make these findings based on the evidence of record. "To defeat a motion for summary judgment, the nonmoving party must show that there is more than merely 'a scintilla of evidence' supporting his position, ... or 'some metaphysical doubt as to the material facts.'" *Spangler v. City of Phila.*, 523 F. App'x 142, 145 (3d Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Here, Plaintiff's evidentiary proffer fails to establish any genuine dispute as to the fact that a

certificate of organization for Clarity Software, LLC was *not* filed with the Pennsylvania

Department of State prior to March 7, 2013.[12]

Moreover, even if it could be inferred, as Plaintiff contends, that "Clarity Software, LLC"

was a validly formed LLC "at some [unspecified] point" prior to March 7, 2013, this would not

be sufficient for purposes of establishing Plaintiff's ownership of the subject copyright. The key

date by which Plaintiff's *de jure* LLC existence must be shown is August 29, 2003, as that is the

date on which title to the copyright was supposedly transferred pursuant to the 2003 Agreement.

Because the record here is insufficient to support a reasonable finding that Clarity Software, LLC

existed as a duly organized, *de jure* limited liability company on August 29 2003, Plaintiff could

not have obtained title to the copyright in that particular capacity pursuant to the 2003

Agreement.

---

[12] Plaintiff contends that Defendant's "assertion of defenses based on decade-old facts is unfairly prejudicial" to Plaintiff (Pl.'s Br. Opp. to Def.'s Mot. Summ. J. 1, ECF No. 23) and, therefore, "all gaps in the testimonial and evidentiary record should thus be resolved with inferences that[,] had discovery been conducted close in time to the events in question, facts would have been recovered favoring Clarity"(*id.* at 3). This argument overlooks the fact that Plaintiff is the party that instigated this litigation and thereby dictated the timing of the defenses being raised herein. Plaintiff's argument also overlooks the fact that, as the party asserting a copyright infringement claim, "Clarity Software, LLC" bears the burden of proving standing by demonstrating its ownership of the subject copyright. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361 (1991)(to establish copyright infringement, a plaintiff must prove: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original); *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.,* 307 F.3d 197, 206 (same). By demonstrating that the Pennsylvania Department of State has no record of Plaintiff's existence prior to March 7, 2013, Defendant essentially demonstrated a lack of evidence to establish Plaintiff's ownership of the subject copyright -- an essential element of Plaintiff's case. Accordingly, under the well-recognized standard for reviewing summary judgment motions, it is incumbent upon Plaintiff to point to evidence in the record demonstrating that there is a genuine dispute for trial concerning this issue. For the reasons stated, Plaintiff has failed to produce evidence from which a rational jury could conclude that a certificate of organization was properly filed with the Department of State prior to 2013.

B. *Was Plaintiff a "De Facto" LLC as of August 29, 2003?*

Plaintiff's alternative theory is that, even if it was not a *de jure* LLC prior to March 7, 2013, it was operating as a *de facto* LLC and thus validly acquired title to the copyright via the 2003 Agreement. Defendant challenges this theory on two fronts: first, that Pennsylvania does not recognize *de facto* limited liability companies; second, that, in any event, Plaintiff cannot demonstrate facts that would establish its *de facto* LLC status.

### 1. Are De Facto LLCs Recognized in Pennsylvania?

As noted, the Limited Liability Company Law of 1994 provides that an LLC comes into being when its certificate of organization is filed in the Commonwealth's Department of State, "or at any later effective time specified in the certificate of organization." 15 Pa. C.S.A. §8914(b). A similar rule applies with respect to corporations formed under the Business Corporation Law of 1988 ("BCL"). *See* 15 Pa. C.S.A. §1309(b) (stating that corporate existence begins "[u]pon the filing of the articles of incorporation in the Department of State or upon the effective date specified in the articles of incorporation, whichever is later.").

The BCL recognizes the existence of *de facto* corporate entities in certain limited circumstances. The law provides that:

> [w]here heretofore or hereafter any act has been or may be done or any transfer or conveyance of any property has been or may be made to or by any corporation created or intended to be created under any statute supplied[13] or repealed by this part, in good faith, after the approval of the articles or application for a charter or issuance of letters patent but without the actual recording of the original papers with the endorsements thereon, or a certified copy thereof, in the office of any recorder of deeds, as provided in such statutes then in force, the acts, transfers and conveyances shall nevertheless be deemed and taken to be valid and effectual for

---

[13] "Supplied" in this context means "effectively superseded by a later statute which comprehensively covers the same subject matter, but which does not contain an express repeal of the supplied statute." *See* 15 Pa. C.S.A. §504, 1988 Committee Comment (citing 1 Pa. C.S.A. § 1971).

all purposes, regardless of the omission to record the original papers with the endorsements thereon, or a certified copy thereof, as heretofore required by such statutes. Every such corporation shall be deemed and taken to have been incorporated on the date of approval of its articles or application for a charter or on the date of issuance of its letters patent, whichever event shall have last occurred.

15 Pa. C.S.A. §504 (internal footnote added).

By its plain terms, Section 504's recognition of *de facto* status applies only to "certain defective *corporations*" created or intended to be created under predecessor statutes to the BCL. *Id.* There is no corresponding provision pertaining to "defective LLCs" under the Limited Liabilities Company Law of 1994.[14] *See generally* 15 Pa. C.S.A. §§8901-8998. Moreover, Plaintiff has not cited any decision wherein a *de facto* limited liability company has been recognized, and this Court has likewise been unable to locate any cases employing that concept. Thus, there appears to be an absence of any clear precedent under Pennsylvania law for the recognition of a *de facto* limited liability company.

### 2. Could a Jury Reasonably Find that Clarity was a *De Facto* LLC as of August 29, 2003?

Even assuming, however, that a *de facto* LLC is a recognized entity under Pennsylvania law, there is insufficient evidence in this record from which a jury could find that Clarity ever achieved that status prior to its formal organization on March 7, 2003. The BCL's codification of the *de facto* corporation doctrine has limited application; it applies only to corporations: (a)

---

[14] As Defendant observes, one explanation for this might be that the *de facto* corporation doctrine was borne of an era when corporation formation was a more decentralized and complicated process. By contrast, limited liability companies are a newer type of entity whose formation is relatively straightforward and requires that the applicant supply only rudimentary information. *See generally* 15 Pa. C.S.A. §§8912-8914. As a result, bona fide good faith efforts to organize an LLC are unlikely to fail.

that were "created or intended to be created" under statutes superseded or repealed by the BCL;[15] and (b) that are or were involved in acts or transfers or conveyances of property (i) "in good faith" (ii) "*after the approval of the articles or application for a charter or issuance of letters patent*" (iii) "but without the actual recording of the original papers ... or a certified copy thereof, in the office of any recorder of deeds" as required by the predecessor statute. 15 Pa. C.S.A. §504 (emphasis added). When these circumstances exist, Section 504 ensures that "the acts, transfers and conveyances shall nevertheless be deemed and taken to be valid and effectual for all purposes," despite the fact that the corporation's approved incorporating documents (or certified copies thereof) were not recorded in the office of the recorder of deeds, as the predecessor statutes required. *Id.* Moreover, in such circumstances, "[e]very such corporation shall be deemed and taken to have been incorporated *on the date of approval of its articles or application for a charter or on the date of issuance of its letters patent, whichever event shall have last occurred.*" *Id.* (emphasis added). As this language demonstrates, one of the prerequisites for *de facto* corporate status under the BCL is state approval of the relevant corporate formation documents.

In this regard, the BCL's codification of the "*de facto* corporation" doctrine is consistent with the version of the doctrine that had previously developed under Pennsylvania common law. *De facto* corporate status under Pennsylvania common law traditionally involved three requirements: "First, there must [have been] a law or charter under which an organization might

---

[15] Because §504 does not provide *de facto* status to corporations "created or intended to be created" under the BCL and applies only to corporations ostensibly formed under predecessor statutes, Defendant contends that §504 manifests a legislative intent to abrogate the common law doctrine of *de facto* corporate status. Plaintiff disputes this point, and the issue remains unsettled under Pennsylvania law. For present purposes, the Court need not decide this legal issue because, even if the common law doctrine remains in force in Pennsylvania, Plaintiff cannot demonstrate that it achieved *de facto* LLC status during the relevant time period.

be effected. Second, there must [have been] an attempt to organize which falls so far short of the requirements of the law or charter as to be ineffectual. Third, there must [have been] an assumption and exercise of corporate powers, notwithstanding the failure to comply with the law or charter." *Appeal of Riviera Country Club,* 176 A.2d 704, 706 (Pa. Super. Ct. 1962) (*citing In re Gibbs' Estate*, 27 A. 383 (Pa. 1893)).

Although Pennsylvania case law does not definitively spell out what constitutes a sufficient "attempt to organize," the cases suggest that it requires issuance of a corporate charter or other similar indicia of state-approved corporate status. *See, e.g., In re Mt. Sharon Cemetery*, 120 A. 700, 701 (Pa. 1923) (holding that individuals could not collaterally challenge the validity of a company's corporate charter on the ground that the articles of incorporate failed to adequately specify the place where the company's business would be transacted; company was at least a *de facto* corporation, and therefore the validity of its formation could be attacked only by the Attorney General); *Pinkerton v. Pennsylvania Traction Co.*, 44 A. 284, 285 (Pa. 1899) (electric railway company was *de facto* corporation where its corporate charter had been issued but certificate was not properly recorded as required by the governing statute); *Spahr v. Farmer's Bank, Carlisle,* 94 Pa. 429, 1880 WL 13400 at *6 (Pa. May 13, 1880) (where corporate charter had been granted to certain persons to act as a corporation and they were "actually in the possession and enjoyment of the corporate rights granted," persons were functioning as a *de facto* corporation whose corporate existence and ability to contract could not be collaterally challenged by parties dealing with them); *Cochran v. Arnold,* 58 Pa. 399, 1868 WL 7248 at *5 (May 5, 1868) (where business had obtained and recorded a certificate of association for corporate purposes and had ostensibly met all the legal requirements for corporate formation, business had at least a *de facto* existence, despite an alleged defect in its original certificate of

22

incorporation regarding statements about the capital paid into the business); *Schmitt v. Potter Title & Trust Co.,* 61 Pa. Super. 301, 1915 WL 4530 at *3 (Pa. Super. May 6, 1915) (entity was *de facto* corporation where it failed to record its corporate charter in the recorder's office in accordance with the governing statute but was otherwise functioning as a corporate entity). *C.f. Appeal of Riviera Country Club*, 176 A.2d 704, 707 (Pa. Super. Ct. 1961) (club was not *de facto* nonprofit corporation prior to January 18, 1960, when it obtained its charter; there was no evidence of an attempt to organize prior to that date, and promotional and organizational activities that preceded actual incorporation were insufficient to confer *de facto* corporate status); *MM Properties, Inc. v. Coolawalla Enterprises, Inc.*, No. Civ. A. 95-7598, 1997 WL 189377 *11 (E.D. Pa. April 16, 1997) (court finding, after a bench trial, that plaintiff was not a *de facto* corporation prior to March 14, 1994, the date on which it was lawfully incorporated, because there was no attempt to incorporate prior to that date); *Tan-Line Studios, Inc. v. Bradley*, Civ. A. No. 84-5925, 1986 WL 3764 *11 (E.D. Pa. March 25, 1986) (defendants failed to establish the existence of a *de facto* corporation where there was no proof of an effort in good faith to incorporate, which is "an essential element of that concept") (citing Fletcher Cyc. Corp. §3777 (Perm Ed. 1982)).

In sum, under both the BCL and Pennsylvania common law, *de facto* corporate status has traditionally required the filing of corporate formation documents and approval of same by the Commonwealth. Applying this concept to the context of limited liability companies -- and assuming only for the sake of argument that Pennsylvania courts would recognize the concept of *de facto* LLCs, the Court concludes that *de facto* LLC status requires, at a minimum, colorable compliance with the provisions of the Limited Liability Company Law of 1994, including

acknowledgment by the Commonwealth Department of State of a duly filed certificate of organization.

Based on the record at hand, Plaintiff cannot demonstrate a triable issue of fact relative to its alleged *de facto* LLC status prior to March 7, 2013. For the reasons previously discussed, Plaintiff has not produced evidence sufficient to support a reasonable finding that there was an attempt to organize Clarity as an LLC prior to March 7, 2013 by filing a certificate of organization that was accepted and approved by the Commonwealth's Department of State. Plaintiff has failed not only to produce a copy of any certificate of organization filed by "Clarity Software, LLC" prior to March 7, 2013; it has also failed to produce any contemporaneous documentation to suggest that a certificate of organization was ever filed. (DCSMF ¶¶ 25-31.)

Plaintiff has presented testimony from Wallace that Wallace filled out forms and instructed an attorney to file them and to organize Clarity as an LLC. Wallace does not recall precisely when Clarity was formed, although he stated that it could have been August 29, 2003. (Wallace Dep. 83-23-84-:1, A. 22, ECF No. 20-1.) Wallace does not recall the name of the attorney he hired for this purpose, nor does he possess any documentation indicating that he retained an attorney to form the company. (Wallace 44:12-13, A. 11; id. at 68:24-69:8, A. 18.) Neither Plaintiff nor Wallace have any documentation showing that anyone paid the filing fee for forming "Clarity Software LLC." (A. 95; Wallace Dep. 73:24-74:2, A. 19-20, ECF No. 20-1.) Given the dearth of evidence in the record to support a colorable attempt to organize Clarity as an LLC prior to March, 7, 2013, the Court cannot say there is a genuine, triable issue of fact concerning Clarity's *de facto* existence as an LLC as of August 29, 2003.[16] Because no

---

[16] Plaintiff cites *Western Roofing Co. v. Golant,* 1987 Mass. App. Div. 36 (1987), for the proposition that reliance upon an attorney to form a corporation is sufficient to achieve *de facto* status, despite the attorney's failure to file

reasonable jury could find that Plaintiff existed, either in *de jure* or *de facto* form as of August 29, 2003, Plaintiff could not have obtained title to the copyright via the 2003 Agreement. *See Lester Assoc. v. Commonwealth of Pa.*, 816 A.2d 394, 399 (Pa. Commw. Ct. 2003) (where purported LLC did not exist and was not capable of taking title to property at the time that certain real estate was purported conveyed to it, the deed was void *ab initio* and no legal transfer of title to the property could have occurred).

C. *Did Heck Validly Transfer Title to the Copyright to Plaintiff in 2013?*

Given this Court's conclusion, as a matter of law, that "Clarity Software, LLC" did not exist as either a *de jure* LLC or a *de facto* LLC on August 29, 2003 and could not have taken title to the copyright as of that date, it follows that title to the copyright necessarily remained with Heck as of August 29, 2003. Plaintiff insists that, under this scenario, it obtained valid title to the copyright by virtue of a transfer agreement that was executed by Heck and Plaintiff following "Clarity Software, LLC's" organization on March 7, 2013.

This theory is also not viable because of the fact that Heck filed for Chapter 13 bankruptcy on December 31, 2003. As of that point, all of Heck's property, including his title to the copyright, became part of his bankruptcy estate. *See* 11 U.S.C. §541(a) (1) (The

---

incorporating documents. Based on our prior discussion of Pennsylvania law relative to *de facto* corporations, the Court is not persuaded that *Western Roofing's* rule of law would be adopted by Pennsylvania courts. Furthermore, *Western Roofing* does not appear to represent a consensus view among the various states. *See, e.g., Fleischhauer v. Feltner*, 879 F.2d 1290, 1299 (6th Cir. 1989) (business did not have *de facto* corporate status where the only evidence in the record to support such a finding was two letters written on putative corporation's stationery and defendant's remark that he thought he told his lawyer to incorporate the company; court found that "[t]hese efforts fall far short of any good faith attempt to incorporate") *Leber Assoc., LLC v. The Entertainment Group Fund*, No. 00 Civ. 3759 LTS MHD, 2003 WL 21750211, at *10 (S.D.N.Y. July 29, 2003) ("Merely giving instructions to an attorney is insufficient as a matter of law to establish *de facto* status.") (applying Delaware law); *Conway v. Samet*, 300 N.Y.S. 2d 243, 246 (N.Y. Sup. 1969) ("[m]ore is required to establish the *de facto* corporation defense than giving instructions to an attorney").

25

commencement of a case under section 301, 302, or 303 of the Bankruptcy Code creates an estate which is comprise of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case."); *Kunkle v. Jasin,* 420 F. App'x 198, 200 (3d Cir. 2011) (noting that a bankruptcy estate can encompass the debtor's intellectual property, such as interests in copyrights) (*citing United States v. Inslaw, Inc.,* 932 F.2d 1467, 1471 (D.C. Cir. 1991)). In submitting his bankruptcy schedules, Heck did not list his ownership interest in the copyright among his items of personal property (*see* A. 151). Consequently, that property was apparently never administered by the Trustee after Heck's Chapter 13 filing was converted to a Chapter 7 filing, and the copyright therefore could not have been abandoned to Heck by the Bankruptcy Trustee. *See* 11 U.S.C. §554(c) ("Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title."); *id.* at §554(d) ("Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."). *See also Hutchins v. I.R.S.,* 67 F.3d 40, 43 (3d Cir. 1995) ("It is clear that an asset must be properly scheduled in order to pass to the debtor through abandonment under 11 U.S.C. §554.") (citing cases).

As a result of the foregoing, the Court agrees with Defendant that the Bankruptcy Trustee is the real party in interest with respect to the subject copyright. Because Plaintiff has failed to proffer evidence sufficient to establish that it owned the copyright at any time, either before or after its formal organization on March 7, 2013, Plaintiff lacks standing to pursue the copyright

infringement claims set forth in the operative pleadings of these consolidated civil actions.[17]

Moreover, because the Trustee is the real party in interest relative to the copyright in question,

Heck also lacks standing and cannot be substituted in place of Plaintiff as the real party in

interest to these consolidated copyright actions.[18]

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 18) is

granted, and judgment will be entered in its favor at both docket numbers.[19]

An appropriate Order of Judgment will follow.

Dated: 9-30-14

Mark R. Hornak

United States District Judge

---

[17] Defendant argues in the alternative that, even if Plaintiff somehow took title to Heck's copyright pursuant to the 2003 Agreement, Plaintiff is nevertheless judicially estopped from relying on or asserting such a transfer of title in this case because Heck failed to disclose the transaction (or the 2003 Agreement) on his bankruptcy schedules. In light of the Court's determination that Plaintiff has failed to demonstrate an issue of fact relative to its ownership of the copyright in question, the Court need not address Defendant's judicial estoppel argument.

[18] Even if Heck could be substituted, there is no evidence of record to establish that Heck has a registration for the copyright.

[19] Both the First Amended Complaint in the 2012 Lawsuit (Case No. 2:12-cv-1609 at ECF No. 31), and the Complaint in this lead case (No. 2:13-cv-795 at ECF No. 1), assert a single cause of action against Defendant for alleged copyright infringement. Although the Complaint in this lead case alleges additional facts relating to Clarity's corporate status and alleged chain of ownership of the copyright in question, the two pleadings are otherwise virtually identical with respect to the averments that form the basis for the alleged copyright infringement. The primary difference between the two cases is that the 2012 Lawsuit was originated by "Clarity Software, LLC" prior to its formal organization on March 7, 2013, while the lead case was commenced by Clarity Software, LLC as a duly organized limited liability company. Because this Court has concluded, as a matter of law, that: (i) there is insufficient evidence to support Clarity's existence as either a *de jure* LLC or a *de facto* LLC as of August 29, 2003; (ii) "Clarity Software, LLC" could not have taken title to the copyright by virtue of the 2003 Agreement; (iii) the copyright became part of Heck's bankruptcy estate as of December 31, 2003; and (iv) the copyright was never administered or abandoned and remains part of Heck's bankruptcy estate, it necessarily follows that "Clarity Software, LLC" cannot prevail in either of the two consolidated cases. Accordingly, the Court's decision to grant summary judgment in favor of Defendant in this lead case necessarily requires entry of judgment in favor of Defendant at Case No. 2:12-cv-1609 as well.